IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PHILLIP N. KERCH, | : |
| Plaintiff, | : |
| V. | : NO. 5:23-cv-00137-MTT-CHW |
| REGIONAL DIRECTOR BENJAMIN FORD, *et al.*, | : |
| Defendants. | : |

## ORDER & RECOMMENDATION

Plaintiff Phillip N. Kerch, a prisoner in Wilcox State Prison in Abbeville, Georgia, has filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1. Plaintiff has also filed a motion for leave to proceed in this action *in forma pauperis* with a motion to amend his complaint to add parties and a request for relief. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2; Mot. to Amend/Correct, ECF No. 5. As set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* and his motion to file an amended complaint are **GRANTED**.

Plaintiff's complaint is now ripe for preliminary review, and on that review, Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to safety claims against Defendants Warden Charles Mims, Deputy Warden Tonya Ashley, and Unit Manager Melissa Lawson, as well as his retaliation claims against Lawson and Mrs. Dunnigan. It is **RECOMMENDED** that Plaintiff's deliberate indifference to safety claims against Dunnigan and Regional Director Benjamin Ford and his due process claim against Dunnigan be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

It is further **RECOMMENDED** that Plaintiff's request for injunctive relief be **DENIED**.

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Any court of the United States may authorize the commencement of a civil action, without prepayment of the required filing fee (*in forma pauperis*), if the plaintiff shows that he is indigent and financially unable to pay the court's filing fee. *See* 28 U.S.C. § 1915(a). As permitted by this provision, Plaintiff has moved for leave to proceed *in forma pauperis* in this case. Accordingly, because Plaintiff's filings show that he is unable to prepay any portion of the filing fee, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**.[1]

Plaintiff is, however, still obligated to eventually pay the full balance of the filing fee, in installments, as set forth in § 1915(b). The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if Plaintiff's complaint is dismissed prior to service. For this reason, the **CLERK** is

---

[1] Plaintiff was previously found to have accrued three strikes pursuant to 28 U.S.C. § 1915(g), preventing him from proceeding *in forma pauperis* in the absence of factual allegations demonstrating imminent danger of serious physical injury. *See* R. & R., *Kerch v. Jones*, Case No. 4:22-cv-00082-CDL-MSH (M.D. Ga. Aug. 24, 2022), ECF No. 15. Two of those strikes, however, were based on cases that were dismissed for failure to exhaust his administrative remedies, which the Eleventh Circuit had previously held constituted a strike. Recently, the Eleventh Circuit published *Wells v. Brown*, 58 F.4th 1347 (11th Cir. 2023), holding that a dismissal for failure to exhaust only counts as a strike when the failure to exhaust appears on the face of the complaint, such that the dismissal amounts to a dismissal for failure to state a claim. The two dismissals for failure to exhaust in Plaintiff's cases do not satisfy this standard, and thus, Plaintiff has only accrued one strike for the purposes of the three-strikes rule. *See Kerch v. Berry*, Case No. 5:16-cv-00171-CAR-MSH (dismissed for failure to state a claim).

**DIRECTED** to forward a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee, as explained below.

    A.  <u>Directions to Plaintiff's Custodian</u>

Because Plaintiff has now been granted leave to proceed *in forma pauperis* in the above-captioned case, it is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the **CLERK** of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account at said institution until the $350.00 filing fee has been paid in full. The funds shall be collected and withheld by the prison account custodian who shall, on a monthly basis, forward the amount collected as payment towards the filing fee, provided the amount in the prisoner's account exceeds $10.00. The custodian's collection of payments shall continue until the entire fee has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

    B.  <u>Plaintiff's Obligations Upon Release</u>

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on

these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTION TO AMEND/CORRECT

As noted above, Plaintiff has filed a motion to amend his complaint. Mot. to Amend/Correct, ECF No. 5. In that motion, Plaintiff seeks to add a defendant and a request for relief to his complaint. As relevant here, a plaintiff may file an amended complaint "once as a matter of course" if he does so within twenty-one days of service. Fed. R. Civ. P. 15(a)(1)(A). Because Plaintiff's complaint has not yet undergone preliminary review or been served on any defendants, Plaintiff is entitled to amend it once as a matter of course. *See id.* Accordingly, Plaintiff's motion to amend is **GRANTED**, and Plaintiff's claims against this additional defendant are considered below.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.  Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's complaint is now ripe for preliminary review. *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings). When performing this review, the court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys,"

4

and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a

statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.     Plaintiff's Allegations

In his complaint, Plaintiff asserts that he is known as a "snitch" with the Georgia Department of Corrections ("GDOC") prison system. Compl. 5, ECF No. 1. In September 2021, while Plaintiff was going to his detail in Rutledge State Prison, Plaintiff walked up on a kitchen staff worker and an inmate making a transaction involving contraband. *Id.* Because Plaintiff is known for assisting prison officials by telling them who has contraband, a "hit" has been put out on Plaintiff. *Id.* Plaintiff requested protective custody, but instead he was put into administrative segregation for refusing housing. *Id.* Plaintiff states that he spoke to an Investigator Nagler about what he knew about contraband entering the prison. *Id.*

On June 7, 2022, Plaintiff was transferred to Baldwin State Prison. *Id.* When he arrived, Plaintiff explained his situation to Deputy Warden Martin, who also placed Plaintiff in administrative segregation for refusing housing. *Id.* Because word had spread to inmates in Baldwin State prison about the hit being placed on Plaintiff, Plaintiff was raped by his cellmate. *Id.*

On February 23, 2023, Plaintiff was transferred to Wilcox State Prison where he told Warden Charles Mims about his situation. *Id.* at 5-6. At some point, Plaintiff was confronted by inmates who were aware of Plaintiff's reputation as an informant. *Id.* at 6. Plaintiff was again placed in administrative segregation rather than protective custody. *Id.* In segregation, Plaintiff was physically and sexually assaulted by a cellmate. *Id.* Plaintiff filed a complaint and was placed in a cell with a known member of the Crips gang. *Id.* This cellmate is now taking Plaintiff's food and threatening to injure Plaintiff if Plaintiff tells on him or does not do what he says. *Id.*

Other inmates who know that Plaintiff is a snitch have made it known to Plaintiff that they will harm him if given the chance. *Id.* Plaintiff constantly receives death threats, and he is afraid that they will be carried out. *Id.* Plaintiff has filed numerous requests for protective custody. *Id.* In administrative segregation, no officer stays on post, and anyone can come into the unit. *Id.*

On March 25, 2023, Plaintiff's cellmate went through Plaintiff's legal work and saw documents relating to another lawsuit that Plaintiff has pending, in which he discusses officials at Rutledge State Prison. *Id.* Plaintiff's cellmate is using this lawsuit to blackmail Plaintiff into giving him food packages, clothes, and other items. *Id.* Plaintiff's cellmate also "smacks [Plaintiff] around" and tells Plaintiff that he will make sure that Plaintiff gets put into a cell with an inmate who will stab him. *Id.*

On March 28, 2023, Plaintiff's cellmate punched Plaintiff in the face and told Plaintiff that, if he told, he would tie Plaintiff up and torture him. *Id.* at 7. Plaintiff sent

7

Deputy Warden Tonya Ashley, Warden Charles Mims, and Unit Manager Melissa Lawson a letter telling them about this occurrence and filed an emergency grievance. *Id.* Plaintiff has also written to his grandmother about his situation, and she has called the prison. *Id.* Although Plaintiff was asked to fill out a statement, nothing has been done to protect Plaintiff. *Id.*

Plaintiff asserts that Regional Director Benjamin Ford "has been aware of [Plaintiff's] situation" since 2021, when Plaintiff was in Rutledge State Prison. *Id.* Plaintiff further states that Ford "has been made aware" that the situation is ongoing. *Id.* Plaintiff lives in constant fear of being hurt or killed. *Id.* Unit Manager Lawson does not care about Plaintiff's situation and has told Plaintiff that Plaintiff would regret it if he kept causing trouble. *Id.*

Plaintiff filed this lawsuit naming Warden Mims, Deputy Warden Ashley, Unit Manager Lawson, and Regional Director Ford as defendants. *Id.* at 4. Plaintiff alleges that these defendants have violated his Eighth Amendment rights by failing to put Plaintiff into protective custody or otherwise to provide reasonable safety precautions. *Id.* at 6-7. Plaintiff further asserts that Lawson and Mims have retaliated against him by threatening him for exercising his legal rights. *Id.* at 7.

In his motion to amend the complaint, Plaintiff adds Mrs. Dunnigan as a defendant, noting that she is the grievance coordinator at Wilcox State Prison. Mot. to Amend/Correct 1, ECF No. 5. Plaintiff asserts that Mrs. Dunnigan has violated his First Amendment rights and his right to due process by failing to investigate or respond to his

8

grievances even though he has clearly explained the problem. *Id.* In this regard, Plaintiff has filed multiple grievances explaining that he has received threats and harassment, requesting protective custody, and describing the abuse by his cellmate, but Mrs. Dunnigan has not responded to the grievances or investigated Plaintiff's claims. *Id.* at 2. On April 27, 2023, Plaintiff received a response from Mrs. Dunnigan that said, "you file too much paperwork, quit it, or else you'll be sorry." *Id.*

### III. Plaintiff's Claims

#### A. Deliberate Indifference to Safety

Plaintiff claims that all of the defendants were deliberately indifferent to his safety. To state an Eighth Amendment claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk the prisoner's health or safety. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires a showing that the defendant knew an excessive risk to health or safety existed but disregarded that risk. *Id.* at 1289-90. If the defendant took action that reasonably responded to the risk, the defendant will not be held liable, even if the harm was not averted. *Id.* at 1290.

Plaintiff asserts that the defendants have been deliberately indifferent to Plaintiff's safety by declining to place him in protective custody. Although Plaintiff's allegations in this regard are somewhat vague, the Court must accept Plaintiff's allegations as true and construe them in his favor. Applying this standard, Plaintiff's allegations suggest that he

is a known snitch and that a hit was put out on him in late 2021. Since that time, Plaintiff has been transferred to different prisons, but threats have followed him throughout. At Wilcox, Plaintiff has continued to receive threats and other inmates have made it known to him that they will carry out such threats if given the opportunity.

On coming to Wilcox, Plaintiff was placed in a cell where he was assaulted by his cellmate. Plaintiff complained about the assault and was moved to a new cell with a gang member, who has taken Plaintiff's food and other items, punched Plaintiff, and threatened him with further harm. In addition to this cellmate threatening Plaintiff if Plaintiff tells on him, other inmates have made it clear that, if Plaintiff is moved to their cell, they will physically harm Plaintiff due to the hit put on him.

1.   Mims, Ashley, and Lawson

Plaintiff alleges that he spoke with Warden Mims about his situation when he arrived at Wilcox. Since his arrival, Plaintiff has continuously complained about the ongoing threats of violence and has sought protective custody. Additionally, Plaintiff wrote a letter to Warden Mims, Deputy Warden Ashley, and Unit Manager Lawson after his cellmate punched him in the face, and they have left him in the cell with this individual. Construing Plaintiff's allegations in his favor, he has arguably alleged facts showing that these defendants are aware of a risk of harm to Plaintiff and have disregarded that risk. Thus, Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to safety claim against Mims, Ashley, and Lawson.

2. <u>Dunnigan</u>

Plaintiff also alleges that he has submitted grievances to Mrs. Dunnigan. Plaintiff does not allege facts suggesting that Mrs. Dunnigan has been involved in any decisions regarding his placement within the prison or that she has participated in any action involved with his claims, other than with regard to his grievances.

The denial of a grievance is not sufficient to establish an official's personal participation in an alleged constitutional violation. *See Larson v. Meek*, 240 Fed. Appx. 777, 780 (10th Cir. 2007). Prison officials who were not involved in the alleged constitutional violation, and whose only roles involved the denial of administrative grievances or the failure to act, are not liable on the theory that failure to act constituted acquiescence in the unconstitutional conduct, even if the grievance was denied. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir.2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (refusing to impose liability on supervisory officials who denied administrative grievances and failed to act on allegations); *see also Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming dismissal of supervisory liability claims against two defendants who denied grievances because the record failed to show personal participation or a causal connection). Therefore, it is **RECOMMENDED** that Plaintiff's deliberate indifference to safety claim against Mrs. Dunnigan be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

3. <u>Ford</u>

With regard to Regional Director Benjamin Ford, Plaintiff's only allegations are

11

that Ford has been aware of Plaintiff's situation since 2021 and that he has been made aware that the situation is ongoing. These allegations are vague and unsupported. In particular, Plaintiff does not allege any facts to show that Ford is involved in Plaintiff's placement or treatment at Wilcox. Moreover, Plaintiff alleges no specific facts to demonstrate that Ford is actually aware of any danger to Plaintiff in his current placement and has disregarded such danger. Therefore, it is **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** as to Regional Director Ford.

### B.   Retaliation

Plaintiff next contends that Warden Mims and Unit Manager Lawson retaliated against him by threatening him if he continues to pursue relief. Additionally, Plaintiff asserts that Mrs. Dunnigan violated his First Amendment rights by threatening him as well. Based on the context of Plaintiff's claims, it appears that Plaintiff is also alleging retaliation by Dunnigan.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow*, 320 F.3d at 1248. Thus, a prisoner litigant may state a claim for retaliation by alleging that (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a causal relationship between the speech and the retaliatory action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights."

*Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). In this regard, a plaintiff does not have to show that his own exercise of his rights has been chilled, only that a jury could find that the acts would chill a person of ordinary firmness. *Id.* at 1254-55.

In *Pittman v. Tucker*, 213 F. App'x 867, 868 (11th Cir. 2007) (per curiam), the plaintiff alleged that prison officers threatened him with physical violence to deter him from filing grievances. In particular, one of the officers threatened that "something drastic" would happen if Plaintiff continued to file grievances. *Id.* at 870. The Eleventh Circuit held that "a reasonable jury could find that the threat, if made, was sufficient to deter a person of ordinary firmness from filing additional grievances" because the person who made it "held a position of significant authority and his job involved reviewing grievances." *Id.* at 871. The Court also noted that an inmate could interpret "something drastic" as a threat of violence. *Id.*

### 1. Dunnigan and Lawson

Plaintiff alleges that he engaged in constitutionally protected speech insofar as he has filed grievances and lawsuits relating to his problems in the prison. Plaintiff asserts that Unit Manager Lawson told Plaintiff that he would regret it if he kept causing trouble. Similarly, Mrs. Dunnigan told Plaintiff to stop filing paperwork "or else you'll be sorry." Although these threats are vague, they are similar to the threat in *Pittman*. Thus, they are sufficient to allow Plaintiff to proceed for further factual development on his retaliation claim against Unit Manager Lawson and Mrs. Dunnigan.

2. Mims

With regard to Warden Mims, Plaintiff does not allege any specific facts showing that Warden Mims threatened him or took any other adverse action against him on account of his filing grievances or otherwise exercising his First Amendment rights. Accordingly, Plaintiff has not stated a retaliation claim against Mims, and it is **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** as to Warden Mims.

C. Due Process

Finally, Plaintiff contends that Mrs. Dunnigan violated his due process rights by failing to process or investigate his grievances. A prisoner does not have a constitutionally protected liberty interest in an inmate grievance process. *Thomas v. Warner*, 237 F. App'x 435, 437-38 (11th Cir. 2007) (per curiam). Therefore, Plaintiff does not state a due process claim based on Mrs. Dunnigan's alleged failure to properly process his grievances. Accordingly, it is **RECOMMENDED** that Plaintiff's due process claim against Mrs. Dunnigan be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

IV. Conclusion

Thus, for the reasons discussed above, Plaintiff will be allowed to proceed for further factual development on his deliberate indifference to safety claim against Warden Charles Mims, Deputy Warden Tonya Ashley, and Unit Manager Melissa Lawson, as well as his retaliation claims against Lawson and Mrs. Dunnigan. It is **RECOMMENDED** that Plaintiff's deliberate indifference claims against Dunnigan and Regional Director Benjamin Ford, retaliation claim against Warden Mims, and due process claim against

Dunnigan be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

## MOTION FOR PRELIMINARY INJUNCTION

In an attachment to his complaint, Plaintiff has also filed a request for a preliminary injunction, asserting that he is under threat of irreparable harm because he has been denied protective custody. Attach. to Compl. 1, ECF No. 1-3. Plaintiff contends that the balance of hardships weighs in favor of granting an injunction because he faces a possibility of being harmed and the defendants will not suffer any harm from granting Plaintiff protective custody. *Id.* at 1-2. Next, he states that he is likely to succeed on the merits of his claims and that relief will serve the public interest. *Id.* at 2.

A temporary restraining order ("TRO") or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than to grant most or all of the substantive relief sought in the complaint. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).[2] Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

---

[2] The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

At this stage, Plaintiff has not sufficiently shown a "substantial likelihood of success on the merits," as he has yet to identify any objective evidence to support his deliberate indifference to safety and retaliation claims. It is still unclear whether Plaintiff will be able to show that the defendants have been deliberately indifferent to his safety by failing to put him into protective custody. Thus, Plaintiff is seeking to have the Court intervene in prison operations without the benefit of a full picture of the circumstances surrounding Plaintiff's claims. The Court cannot determine based solely on Plaintiff's unsupported allegations that he has a substantial likelihood of success on the merits.

Plaintiff has also failed to allege facts showing that his threatened injury outweighs any harm to defendants or that an injunction would not be adverse to the public interest. In this regard, Plaintiff asks the Court to order prison administrators to house him in a particular way. Prison administrators, however, "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The relief requested by Plaintiff in this case would interfere with the officials' decision making with regard to prison operations. Plaintiff's motion, therefore, falls short of meeting the prerequisites for issuance of a temporary restraining order or preliminary injunction and it is **RECOMMENDED** that the request be **DENIED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANTS WARDEN CHARLES MIMS, DEPUTY WARDEN TONYA ASHLEY, UNIT MANAGER MELISSA LAWSON, and MRS. DUNNIGAN,** and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly

advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the

opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 22nd day of June, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge